May it please the court, counsel. In essence, this appeal is about seven steps in seven seconds, and Officer Caple's six-second response within those seven seconds. We believe that for two reasons Officer Caples was entitled to summary judgment based upon qualified immunity. Number one, the suggestion that Mr. Taylor was pushed forward by Officer Caples is contradicted by Mr. Taylor's binding admissions in this complaint, by his deposition testimony, as well as the video recording, all of which we submit establishes that Officer Caples tried to restrain Mr. Taylor by pulling him as Mr. Taylor pulled away from Officer Caples. We also believe that Officer Caples is and was entitled to summary judgment because or for the simple fact that Mr. Taylor failed to provide any clearly established law demonstrating that the use of a controlled takedown under similar circumstances constituted an unconstitutional use of force. Now, as the court is aware, it was the burden on Mr. Taylor to show, number one, that there was a violation of his constitutional rights and that the right was clearly established at the time of the incident in this case in October of 2017. Now, I'd like to direct the court's attention first to the cohort Cohorts v. Smith case. And in that case that was decided last August, in fact, and what the court noted is that passive resistance justifies a greater use of force by an officer, number one, and even if an individual merely appears to be resistant, the officer may use the amount of force necessary to effectuate the arrest. Counsel, as I understand the district court's decision in this case, it turned on the court's assessment that there were material facts and resolved. Would you respond to that resolution by the court? And also, in some respects, the district court didn't really give a legal analysis as to the presence of a clearly established constitutional law would remain for that purpose and evaluation of the right grant of qualified immunity? Well, Judge Smith, let me address your second question first, which is the issue of clearly established law. Of course, in conducting its de novo review, this court can make that determination as a matter of law based upon the plethora of cases that we have provided the court in our briefs. And so our view is that because of the fact that this is a de novo review and because of the fact that the law we submit is clear with respect to what clearly established law means, we believe that this court should decide that particular issue rather than remand it. But on your first point, as the court is aware of the Scott decision and I believe the McAmey versus Tierney case, which was decided in last year, it says the court should not adopt a version of the facts that is blatantly contradicted by the record. And really, the judges, the district court's focus was on one fact, one fact, and that fact was whether or not it was a push or whether or not it was a pull. And we believe that the unrefuted evidence, starting with the binding admissions by Mr. Taylor in his complaint, and I direct the court to that Mr. Taylor, quote, instinctively moved forward trying to escape the grasp of an unknown and unidentified person. That's at paragraph 52. He also alleged in his complaint, which he is bound by, that's the purpose of a complaint, to frame it up. And this court has held many occasions that you're bound by those admissions. He also alleged that, quote, as plaintiff Taylor instinctively moved forward, that's when he was grabbed and that's when he was tripped. But further, with respect to this record, this all lines up, his allegations line up with his deposition testimony. I first direct the court's attention to the joint appendix, page 215 and 216, and I deposed Mr. Taylor and I asked him a question. And so you recall taking one step forward. Answer. Yes, I do. Yeah, it is one step. Question. And then what happened? Answer. My jacket was pulled from behind. It was yanked. My jacket was yanked. And of course, a yank is not a push. Further in the deposition, and this is at joint appendix, page 217, and I asked him a question. And in response, well, let me just, you were bumped and that's caused you to step forward, right? Answer. Step forward. Yeah. There was a presence behind me. Question. Was that before or after he grabbed your jacket? Answer. No. Step, jacket, assault from behind. Question. Okay. Answer. Step, jacket, assault from behind. Question. So you step first and then you felt him grab your jacket. Answer. My jacket was being pulled. Yeah. And that's consistent with his allegations. It's consistent with what was on the video. And of course, a pull is not a push. And lastly, your honor, Mr. Taylor admitted in his deposition that he moved, that he instinctively, he said he instinctively stepped forward in attempting to escape the grasp of lots of people, similar to what he alleged at paid, joint appendix page 227. Question. So you were instinctively trying to escape the grasp. Is that what you are saying? That was my question. Answer. I am saying there was an instinctive forward motion. There was an instinctive forward motion. Question. Okay. Answer. Let the record show there was an instinctive forward motion. So our view is that this notion about a push is belied by his admissions, by the testimony. And based on that, we believe that the plethora of cases that we've cited, there's a case Johnson versus Rogers out of the seventh circuit that cites a plethora of cases, including a circuit cases that say that this kind of control takedown in response to these evolving, rapidly evolving circumstances. Answer. Counselor, I have a question about that. You've stated the facts as you strongly believe them to be. The district court did not find those facts, even in viewing the light, didn't find facts that there is a dispute. Why do, even putting aside right or wrong, whether the district court ultimately is right or wrong, why do we have jurisdiction over this fact? I feel where we're really talking about push, pull, up, down, and the district court just said, this is in dispute. What's our role in that? Well, your honor, we believe that number one, the court's role is to look at the record or to determine on this review, whether or not, if we look at the facts that are light most favorably to the plaintiff, whether or not this theory about a push is precluded by his binding admissions. But if I could just interrupt you quickly, I think there's two different things there. One is viewing the facts in the light most favorable to the non-moving party can be quite different than sort of now we're talking about two different approaches. And I agree that we could, if we had a set of facts that were found in the light most favorable to the plaintiff, we could review that to determine as a matter of law, whether it could proceed, but whether we're deciding whether it's a push or pull, that's where I'm just concerned about our role, our jurisdiction to actually engage in that discussion. Well, and I understand the honor, but in this case, if his admission was that there was not a push, but rather a pull and that he launched himself and that is evident on the video per the Scott case, the United States Supreme Court case in Scott, for this court's decision in Bordeaux, which was decided last year, that to the extent that a push theory is floating around out there that is contradicted and blatantly contradicted by the record is his complaint, is his deposition testimony, and this video, we believe that no reasonable jury could look at those admissions, those facts, and draw a contrary conclusion. And I'd like to talk also about, of course, it's a two-pronged analysis, whether or not there was a constitutional right in this issue about is there some factual dispute about that. That focuses, of course, on the issue of whether or not there was a constitutional violation. The law says that a controlled takedown in this circumstances is permissible in light of the fact that this is a rapidly evolving seven-second situation. But pushing that to the side, of course, we have the issue raised by Judge Schmiff, which is whether or not the plaintiff maintained his court or to the district court any clearly established law holding that this controlled takedown under these circumstances constituted an unconstitutional use of force. And as this court has repeatedly held, this court has jurisdiction to determine that issue, as well as the question of looking at all of the facts in his favor, whether or not those facts would establish an unreasonable unconstitutional use of force. The starting point, of course, is the Supreme Court's decision in the city of Escondido. And the Beaudoin v. Harrison case reaffirmed that or recognized that last year. And what that both cases held is that clearly established law must be particularized to the facts of the case, and that the plaintiff has the burden of identifying a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment. And we believe that no such case has been provided to the district court. No such case has been provided to this court. And the reason being is because there is no such thing. Counsel, this is Judge Schmiff again. Was the state of the law even discussed with the district court before this ruling, or did the district court just decide it on this fact issue? Because the addendum order that we have in our record simply doesn't discuss the state of the law. That's exactly right, Your Honor. The judge did not address the issue of whether or not there was clearly established law as to this excessive force. The judge did address the issue of clearly established law in the context of the claim against a co-defendant, where the court determined that on this First Amendment constitutional claim, that defendant, Mr. Rodney Gee, was entitled to qualified immunity because there was no clearly established law. But the court is absolutely correct that the court did not address the clearly established law question. And we believe, based upon well-established precedent by this court, that this court has the jurisdiction to conduct that review de novo, this court, because really it is a legal question, not a question for the jury, that this court can look at that clearly established law that we cite. Counsel, what facts would we use in determining that? The district court didn't make fact-finding even in the light most favorable to plaintiff, excuse me, said they were in dispute. So we've got a set of shifting facts. So how do we determine, how would you propose that we would determine whether there's any clearly established law? Well, we would assume, as the court has done in this analysis, that there was a constitutional violation. Somehow it was a push. So if we assume it was a push, the question is, is there a case that they can point to, that they have pointed to, because if they haven't done it yet, they cite three cases, none of which are factually analogous to this case. And the question is whether or not that case would demonstrate that what, or really putting Officer Capo on notice that what he did was a constitutional violation. And that is the purpose of that prong, we believe, of the qualified immunity analysis. So the court then would assume all those facts that they say and argue is that you assume all of those facts. Nonetheless, despite those assumptions, there is no clearly established law that would have guided Officer Capo such that he would have been on notice that he would have been committing a crime. And I think I'm pressing against my time. Unless the court has any further questions, I will yield to Ms. Bronson. All right. Thank you, Mr. Norwood. Ms. Bronson? Good morning. I'm Lauren Bronson. I represent Stephen Taylor, the Epoly. This case involves a significant jurisdictional issue. And what Capo says is a question of law, but it's really, what his appeal is really about is asking this court to act as a finder of fact to remove the credibility assessment from the jury. First, I'll discuss the jurisdictional issue, and then I'll discuss what Capo's calls is a question of law. First, the jurisdictional issue is at the heart of Capo's appeal. Capo's is asking this court to second guess the district court's assessment of the facts and all of the evidence. Capo's is trying to get this court to make a decision solely on your review of the video footage of the meeting and ignore all the other evidence favorable to Taylor. Capo's is asking this court to determine that the evidence most favorable to Taylor, most favorable to Capo's conclusively establishes the facts, but it does not. The district court very carefully reviewed the video and found it was inconclusive. The district court then considered the other evidence, deciding all reasonable inferences in favor of Taylor, including the eyewitness accounts of what happened as true. There's no question that at the time Capo's came up from behind Taylor without saying a word, he grabbed Taylor, pushed him body and tripped and body slammed him into the ground head first. There's no question that Taylor is standing there speaking, standing still with his hands clearly visible. It's undisputed Capo's conceded that at that moment when Capo's comes up from behind him without saying a word, that Taylor is not a threat whatsoever to anyone. He is not fleeing. He is not resisting in the only violation. So do you think, is it a disputed fact that he stepped forward or started to approach the front of the room towards the board? So as the district court correctly found, we believe that the disputed fact, that predicate fact that precludes determining as a matter of law, whether Capo's is entitled to qualified immunity, that predicate fact that's in dispute is what caused Taylor to move forward once Capo's grabs him, pushes him, trips him? Well, I'm trying to ask, is it disputed that Capo's begins or that the plaintiff begins to move forward on his own steps towards the board, feels a tug and then pulls away from the tug? Are his statements to that effect not accurate or has he changed his view of that? What is your sense of that as a fact? Can that be established as that's not disputed? What's disputed is that Capo's caused Taylor to move forward. The petition is, it's not an admission. What it says is that when you read the petition in whole and what the other evidence says and has developed is that what's disputed is that Capo's causes Taylor to move forward. He is, Taylor is not moving on his own volition. He is not intentionally moving forward. He is caused to move forward because of Capo's. Capo's causes the entire chain of events that happens when he grabs Taylor and he's caught in it that one. And at the moment he grabs Taylor, he is in taking the evidence in light most favorable. Is it your position that the law was clearly established that an officer in the position of the defendant when instructed to remove someone and in essence, arrest them, remove them from a environment such as that meeting, that they were not entitled to use any force or to use force at the level that was used to affect that arrest if it was the officer's perception that it was being resisted? It's clearly established and we've cited the Brown case in our briefing to the district court as well to this court, as well as the Graham case in which this court derived it's holding in Brown. It's holding that the law was clearly established in Brown from Graham's reason, objective reasonableness factors, but it's clearly established that under the Brown case, as well as Graham, that an officer coming up behind someone who's standing still, who's not threatening, not resisting at the moment that Capo's grabs Taylor that at that moment, and he's the offense that he's committing is a peaceful protest where he's standing, still speaking, not leaving a meeting when the board chair, not a police officer, but the board chair had requested him to leave. And mind you, it was 13 seconds that he is standing there, that the clear cases clearly established as this court held in Brown, that coming up, that when you have somebody who is nonviolent, not threatening, not resisting, and just standing, still speaking, that coming up from behind them, pushed, grabbing, pushing, tripping and body slamming them head first on the ground, that is excessive force. In Brown, you have the woman is sitting in her car. She is nonviolent. She's acute. She has committed a nonviolent misdemeanor offense. She is not fleeing, not resisting at the moment that the officer uses his taser on her. That is similar to what happened here. Are you familiar with this court's decision in Kelsey? I am, Your Honor. The bank decision in that case. How would you compare its facts to the facts here where you have a small woman in a bathing suit, turns away from an officer, instructed to arrest her, is grabbed and thrown down, and qualified immunity was found in that case, was not clearly established. In Kelsey, it's very different than what happened here. In Kelsey, the woman was using threatening language towards a witness who she believed called the police on her. She is turning away from the officers, ignoring their commands to come back. She's heading towards the witness in a threatening manner that the officer perceived as resisting their commands to come back. She was reasonable for an officer to take her down. That is very different than what happened here when you have Mr. Taylor, where it's undisputed that he is non-threatening, not resisting, not fleeing at the moment that Caples grabs him. I'm not so sure that that's exactly right on the facts. Taylor is instructed to be silent. He isn't. He continues to speak. He is instructed that he's about to be taken out if he doesn't stop speaking. I can't see what the limiting principle actually is in your argument that this sort of instinctual starting to move away from an officer who has been directed to take a person who at that point is a trespasser, perhaps, and remove him from the premises. And he says, I instinctively move. Well, what is the limiting principle on the idea that that somehow becomes an involuntary movement? I don't see how you ever limit that because anybody can always claim and say, well, I wasn't thinking. I was just moving because instinctively, I was concerned. Someone had come up behind me. I didn't know who they were. And they invaded my personal space and I instinctively move forward. And all the while he's moving forward towards the board, you know, in a rather kind of heated environment. And then I would direct us that we look at the paragraph as a whole, which Caples is quoting from, because you have we have to look at this paragraph as a whole, because that's just one part of it. So when we look at this paragraph as a whole, it says, at which time, and unbeknownst to Plaintiff Taylor, defendant officer Caples approached Plaintiff Taylor from behind and without warning, command, identification or order grabbed Plaintiff Taylor's jacket, causing Plaintiff Taylor to instinctively move forward. What that says is that Caples is causing Taylor to move forward instinctively. It does not say Taylor is of his own volition moving forward. It does not say that Taylor is resisting or that he's a threat. What this says and what Taylor had said in his deposition is, I was grabbed and that caused me by Caples caused me to instinctively move forward. Taylor said I took one step and then I and it's all caused because of Caples and a reasonable officer under these circumstances would have known that when you cause when you grab somebody and then you push them and cause them to move forward, that you cannot take that as them charging the board or them moving forward of their own volition, resisting your attempts to control them. A reasonable officer is supposed to know what's going on in the mind of a person in Mr. Taylor's position. Once the person starts moving towards the board, people are tackled. I can tell you this, that in the courtrooms where I presided as a trial judge, when somebody started walking towards the bench without permission and they were a party to litigation that had been heeded, they were taken down by either United States marshals or by court security officers. I mean, because they can't read minds and doesn't a reasonable officer have some duty in protecting people in decision-making positions to sort of presume that if guys are moving towards the presiding officer, that they aren't going there to shake his hand or her hand and say, man, you're doing a great job. A reasonable officer would know objectively that when you cause somebody to move forward and you're the cause of that person moving forward, that that officer cannot, that it's unreasonable to interpret that as someone fleeing or trying to resist their arrest, that the officer caused Taylor to move forward, that it was not Taylor's own volition at all. It's capos causing him to move forward at which then he is tripped, body slammed in his head, smashed into the floor, causing a traumatic brain injury. That that is not reasonable for an officer to have interpreted the officer's own conduct and own causing Taylor to move forward as him resisting, or it's very different than someone walking towards the, or Taylor was walking, he was not walking towards the border, going in any way on his own volition. This was all caused by capos causing Taylor to move. And it's very different than he was not in, Taylor was not at any moment before capos grabbed Taylor, causing him to move forward. Taylor is standing still speaking, committed. The only violation he's committed is for 13 seconds, refused to leave the meeting when the board chair had requested that he leave the meeting. And that which time he went, that's when off, that's when officer capos grabs him and causes Taylor to move forward at which you would, you would not dispute that the officer had a, had a, had a reasonable basis for making an approach to the plaintiff and to arrest him. That's correct. That's, he was a trespasser. That was the crime that he had committed was a peaceful trespass in the course of a political protest of continuing to speak when the board chair had requested that he leave for, and this had been going on for 13 seconds when capos comes up from behind without saying a word and grabs Taylor. He could have, what, what, what law requires him to have said anything? That he, he did not, he was not required. It's just a fact to take into consideration that it taking the viewing the light, the evidence in light, most favorable to Taylor, that he does not know that an officer is behind him. And Taylor testified that if I, if the officer had come from the front or if I knew that the officer was there, I would have left the he had an unlike the, the cases that further support that the law is clearly established. That's discussed in Kelsey the Montoya case where you have a woman who raised her arm of, of above her head. And the officers took that as she'd being threatening. And the, this court decided there was a clearly established, right. A genuine issue of material fact as the district court found in this case as to whether she raised her hand because as a threat, or as the plaintiff said, and taking the facts in light, most favorable to the plaintiff, that that's how she normally talked in conversation. And the court face it's holding a Montoya off of drive. It's holding from Brown, which is a case we cited as the law being clearly established that would put an officer on notice in this case, that this use of force. And in Brown, this court has said that force is least justified when you have someone who is non-violent, non-threatening, not resisting, or, or, or, and it had committed a non-violent misdemeanor and he's not fleeing that, that, that the force is least justified in those circumstances and applying the analysis in Brown to the facts of this case, as well as, and then in the small versus McChrystal case, that's also discussed in other cases cited by Caples, that when coming up from behind someone who's walking away from an officer, not responding to their commands, that coming up from behind and tackling them in those situations, that situation is excessive force. And also in the case of Shannon versus Kohler, this court has held that it was unreasonable for an officer to do a takedown maneuver on a suspect that was not violent and not threatening. Thank you, Ms. Bronson. Mr. Norwood, your rebuttal, I believe you got about a minute left. Thank you, Your Honor. Just, just quickly, I'd like to point the court's attention to one of its decisions, Chambers versus Pennycock, which is one of the cases Ms. Bronson relies upon. And in that case, the officer kicked the individual several times, he restrained him on the ground, he choked him while he was on the way to the hospital. And despite the fact that the court held that that use of force was excessive under the circumstances, it nonetheless said that, given the state of the law at that time, which was 2005, that a reasonable officer could have believed that as long as he didn't cause more than de minimis injury, then his actions were protected by qualified immunity. And so none of these cases, all of the cases that the three that she cites, Brown involved, the tasing of a passenger who was seated in the car, clearly factually distinguishable from seven seconds and a split-second reaction to that. Officer Capel was in an untenable position because it was a heated meeting and he had to respond in a snap. And under these cases, that split-second decision should not be second-guessed by courts and the he's darned if he do, darned if he doesn't. And here we have admitted resistance in that there's an acknowledgment by Ms. Bronson that he was grabbed and that he pulled away instinctively otherwise. As the court has noted, his objective intent can't be transferred to an objective officer trying to assess a situation in a split second. And we believe that the record establishes and the law establishes that that split-second decision did not give rise to a constitutional violation and should be protected by qualified immunity. Thank you. Thank you, Mr. Norwood. Thank you also, Ms. Bronson. We appreciate both counsel's presence before us and the argument that you've provided and the briefing you have submitted. We will take your case under advisement.